MICHAEL B. BROWN, Bar No. 179222
michael.brown@stoel.com
THOMAS A. WOODS, Bar No. 210050
thomas.woods@stoel.com
BENJAMIN J. CODOG, Bar No. 307034
ben.codog@stoel.com
MICHELLE J. ROSALES, Bar No. 343519
michelle.rosales@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA  95814
Telephone:  916.447.0700
Facsimile:  916.447.4781

*Attorneys for Plaintiff BRIGHTHOUSE LIFE INSURANCE COMPANY*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| BRIGHTHOUSE LIFE INSURANCE COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ACDF, LLC, a California limited liability company, successor in interest to 104 PARTNERS, LLC; C & A FARMS, LLC, a California limited liability company; MARICOPA ORCHARDS, LLC, a California limited liability company; CANTUA ORCHARDS, LLC, a California limited liability company; FARID ASSEMI, an individual; FARSHID ASSEMI, an individual; DARIUS ASSEMI, an individual, and DOES 1-100,<br><br>Defendants. | Case No. 1:24-cv-01235-KES-SAB<br><br>**PLAINTIFF'S *EX PARTE* MOTION FOR ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION**<br><br>Action Filed: October 10, 2024<br>Trial Date: Not Set |

# *EX PARTE* MOTION FOR APPOINTMENT OF RECEIVER AND FOR PRELIMINARY INJUNCTION

Plaintiff BRIGHTHOUSE LIFE INSURANCE COMPANY ("Plaintiff" or "Brighthouse"), by and through its counsel, and for its *Ex Parte Motion for Appointment of Receiver and for Preliminary Injunction* (the "Motion"), states as follows:

## I.   INTRODUCTION

Defendants ACDF, LLC, C&A Farms, LLC, Maricopa Orchards, LLC, and Cantua Orchards, LLC (the "Borrower Defendants" or "Borrowers"), together with affiliated Defendant Guarantors ("Guarantor Defendants"), are in default to Brighthouse (alone) on a more than $2 million secured debt obligation.  Since mid-September, almost <u>all</u> the Defendants have been sued by other financial institutions for defaults on secured agricultural loans associated with imperiled harvests and imminent loss of irrigated crops, water rights, and delivery systems. Defendants are out of money, and the collateral that is valuable to California's agricultural supply stream *is out of time*.  A receivership and injunction to protect the land Brighthouse is responsible for is now warranted and requested.

As security for the obligations under Brighthouse's Loan Documents[1], the Borrowers granted to Brighthouse, among other rights, priority and continuing, recorded (and perfected) security interests in real property and personal property as collateral located in Kern and Fresno counties. As part of the Loan Documents, the Borrowers expressly consented to Brighthouse's appointment of a receiver in the event of default.  (Declaration of Jeremy Rasmussen (the "Rasmussen Decl.") ¶¶ 12-14; Complaint[2], Ex. 1 (Dkt.14-1), Loan Agreement, § 11.1(g); Exs. 4 (Dkt. 14-4), Deeds of Trust, Section 14.1(g).)

Accordingly, pursuant to Federal Rule of Civil Procedure 66 and L.R. 232, Brighthouse requests the appointment of a receiver in order to conserve, maintain, and manage: (i) real property

---

[1] Brighthouse incorporates the terms of its October 10, 2024 Complaint (Dkt. 1).  Capitalized terms not defined herein shall have the meanings ascribed to them in the Complaint.

[2] Brighthouse filed the Complaint for (1) Breach of Loan Agreement; (2) Breach of Guaranty; (3) Judicial Foreclosure; (4) Specific Performance and Appointment of Receiver; (5) Injunctive Relief; and (6) Replevin.  Corrected exhibits to the Complaint were filed October 25, 2024 (Dkt. 14).

owned by Borrowers, including all appurtenances, improvements, water rights and irrigation equipment and infrastructure, easements, and rent, issues and profits (the "Real Property") (as further defined and described in Brighthouse's Complaint, ¶¶ 16, 21); and (ii) personal property, not limited to: all equipment, goods, and accounts, whether attached or appurtenant to the Real Property; all crops (including without limitation harvested crops, farm products, and seed and the products and proceeds thereof) along with all present and future income, rents, issues, profits and revenues of the crops now or hereafter growing on the Real Property; all rights to the use and enjoyment of water, whether or not appurtenant to the Real Property, and all improvements for water delivery and storage, and easements and permits associated with the same (collectively, the "Brighthouse Receivership Property").

The Defendants have been provided ample notice of this (and other) defaults. (*See* Ramussen Decl. ¶¶ 15-17; Complaint ¶¶ 29-30.)[3]  The defaults are evidently incurable, as Defendants and Defendants-affiliate efforts to secure long-term financing to support the agriculture have fallen short. (Request for Judicial Notice ("RJN") Exs. 1-3.) Borrower ACDF, LLC, for instance, is already subject to two receiverships, one in the process of being continued and expanded from its original scope.[4] (*Id.*) The crop harvest concluded October 2024, and funding is required to preserve and maintain the Brighthouse Receivership Property. (*See* RJN, Ex. 1.) Without sufficient funding, the Brighthouse Receivership Property is subject to damage or destruction if not properly maintained during and after harvest.

Brighthouse is contractually and equitably entitled to the immediate appointment of a receiver to manage and operate, subject to the discretion of this Court, the Brighthouse Receivership Property. Brighthouse also has the right to a preliminary injunction because it faces irreparable

---

[3] *See also* RJN, Exs. 1 and 2.

[4] Borrowers and/or their affiliated farming entities have stipulated and agreed to the appointment of a receiver in two related actions involving real property collateral in their integrated farming operations and acknowledged that "Borrowers face significant cash flow issues and will not have sufficient cash to maintain, preserve, and care for the Property, including but not limited to trees and crops" and that "[s]uch actions would cause damage to the Property, including causing the trees (which make up a significant value of the Property) to be damaged or die." (RJN, Ex. 1 at 4:1-4.)

harm should Borrower Owners and/or other associated Defendants' officers and directors, affiliates, creditors or other interested parties interfere with the receiver in the performance of its duties.

This requested order will ensure that Brighthouse shall protect and preserve the Brighthouse Receivership Property. Brighthouse requests that this Court issue an order appointing a receiver over the Brighthouse Receivership Property and enjoining any and all Borrowers, Guarantor Defendants, and third parties from interfering with the receiver's maintenance and operation of the Brighthouse Receivership Property during the pendency of these proceedings. In addition to maintaining and managing the Brighthouse Receivership Property, Brighthouse also requests that the order appointing the receiver instruct the receiver to: operate the Brighthouse Receivership Property pending any sale of such property; sell inventory and collect accounts in the ordinary course of operations; liquidate the Brighthouse Receivership Property, in whole or in part, by auction or by private sale subject to Court approval; and perform all other acts consistent with the terms of the order entered by the Court.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

**A.     THE LOAN DOCUMENTS AND COLLATERAL.**

On or about February 28, 2017, original lender, now known as Brighthouse, made the Loan to the Borrowers, in the principal amount of Eleven Million Four Hundred Thousand and 00/100 Dollars ($11,400,000.00) ("Loan"). The Loan was secured by, *inter alia*, the Deeds of Trust in favor of Brighthouse as beneficiary. (Rasmussen Decl. ¶ 7(a)-(c); Complaint, Ex. 4 (Dkt. 14-4), 5 (Dkt. 14-5), 8 (Dkt.14-8).) The Deeds of Trust secured the Loan in favor of Brighthouse encumbering the Real Property and further includes as additional collateral an absolute assignment of Borrowers' right, title, and interest in all present and future income, issues, profits, and revenues of the Real Property, Crops from the Real Property, leases relating to and arising from the Real Property, and Proceeds from the Real Property (as those terms are defined therein), and all benefits to be derived therefrom. (Rasmussen Decl. ¶ 21; Complaint, Ex. 4 (Dkt. 14-4) Deeds of Trust, Granting Clause C, § 11.5(a).)

The Deeds of Trust constitute a Security Agreement with respect to the Brighthouse Receivership Property. As further described in the Rasmussen Decl., ¶¶ 10-13 and the recorded

instruments described therein (Dkt. 14-4), including partial reconveyances, a collateral substitution and two consents to transfer, Brighthouse possesses, through the Deeds of Trust, priority security interests in: (i) Real Property, comprising of approximately 378.75 acres of irrigated agricultural land associated with Accessor's Parcel Numbers ("APN") owned by the Borrowers as summarized in the chart below (Rasmussen Decl. ¶ 7(d)); (ii) all appurtenances, fixtures, rights and benefits thereto, including all water rights, water agreements and related water delivery contracts, easements, leases, water storage agreements, rights under irrigation districts, well agreements, drainage rights and all water inventory and water in storage, water permits, and water licenses; and (iii) the products and proceeds thereof related to the Brighthouse Real Property including, but not limited to, the products and proceeds of agricultural products including, but not limited to, irrigated field crops.

| **Kern County** | **Borrower/Owner of Record** |
|---|---|
| APN    295-230-03-00-6 | Maricopa Orchards, LLC |
|            047-340-36 -005 | ACDF, LLC |
|            047-340-13-00-8 | |
| **Fresno County** | **Borrower/Owner of Record** |
| APN    038-210-25S | Cantua Orchards, LLC |

**B.  BORROWERS' INCURABLE DEFAULTS.**

   **(1)   Borrowers Unpaid Loan.**

   On September 4, 2024, Brighthouse caused to be provided to all Defendants a Notice of Default and Demand for Payment for the approximate total due of $131,249.71. Defendants were further informed that if payment was not received by September 10, 2024, Brighthouse would cause to be initiated a demand and acceleration of the Loan. (Rasmussen Decl. ¶ 29; Complaint, Ex. 10 (Dkt. 14-10).)

The past due amount was not paid by September 10, 2024, and on or about September 18, 2024, Brighthouse caused to be sent to Defendants a Notice of Default and Acceleration of Debt. (Rasmussen Decl. ¶ 30; Complaint, Ex. 11 (Dkt. 14-11).)

As of on or about September 18, 2024, the amounts that remain due and owing under the Loan Documents, including but not limited to all principal outstanding, interest, late charges, attorneys' fees, financial advisor fees, expenses, and advances, are in excess of $2,873,672.05. (Rasmussen Decl. ¶ 28.)

**(2)  Other Defaults.**

Brighthouse does not know the extent of Defendants' defaults to additional lenders or creditors, but these defaults (and the acceleration of the Loan) augment the precarious financial situation for Borrowers and their related entities and affiliates. (*See* RJN, Exs. 1-3.)

**C.  BORROWERS' FINANCIAL DISTRESS IS INCURABLE AND PUTS THE RECEIVERSHIP PROPERTY AT RISK OF DISTRESS.**

Borrowers' financial strain and lack of operating cash flow places the Brighthouse Receivership Property in serious peril. (Rasmussen Decl. ¶¶ 24-27; Declaration of Phillip Christensen ("Brighthouse Receiver Decl.") ¶ 6.) The October 21, 2024 Weekly Update of Receiver Lance Miller of Pivot Management Group, LLC, in related actions, has been reviewed. (Rasmussen Decl. ¶ 24, Exhibit 1 thereto). It identified $494,400 in water sales by unknown Maricopa entities and US Bank's receipt of crop proceeds. (*Id*.) Brighthouse is also informed and believes, based on discussions with employees at Agriglobe who recently conducted inspections of the Property and interviews with Borrowers' farm managers, that there has been deferred maintenance of the Real Property, and a receiver is needed to preserve, repair and maintain the collateral. (*Id*.) And based on Borrower comments in related cases, about the Borrower Defendants and their affiliated farming entities inability to pay for water assessments and/or water supplies to adequately preserve and protect the water supplies associated with the Real Property. (Rasmussen Decl. ¶ 24.) Borrowers (all Defendants) have significant cash flow and liquidity issues and have insufficient funds to operate post-harvest. (RJN, Ex. 1 at 4:1-4.) These issues are likely to result

in an inability to pay payroll and maintain a sufficient workforce necessary to manage the Brighthouse Receivership Property.

As a result of the foregoing, there is manifest danger of loss, deterioration, and diminution of the Receivership Property, which, along with the revenue generated by its operations, are the primary sources for repayment of the Loan, and Brighthouse, as an interested and secured party, is threatened with material losses and injuries for which it has no adequate remedy at law against Borrowers.

### III. ARGUMENT AND LEGAL AUTHORITY

#### A. BRIGHTHOUSE IS ENTITLED TO THE APPOINTMENT OF A RECEIVER.

Federal courts may appoint a receiver under their inherent equitable powers, which appointment shall not be disturbed absent an abuse of discretion. *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 843–44 (9th Cir. 2009). Courts consider several factors in their analysis, including: (1) whether the moving party has a valid claim and is likely to succeed in the action; (2) whether the property interest at issue "is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (3) the possibility of irreparable injury to the moving party's interest in property; (4) whether the defendant is of doubtful financial standing; and (5) whether a receiver is necessary to protect the property or property interest of Plaintiff and other parties. *Id*. at 844; *see also N.Y. Life Ins. Co. v. Watt West Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991) (same). The chief factors are the adequacy of the security serving as collateral and financial state of the defendant. *N.Y. Life*, 755 F. Supp. at 292.

##### 1. Borrowers' Written Agreements Establish Brighthouse's Entitlement to the Appointment of a Receiver.

Federal courts have upheld the validity of receiverships based on an express agreement between lender and debtor. *See Okura & Co. (Am.), Inc. v. Careau Grp.*, 783 F.Supp. 482, 499 (C.D. Cal. 1991) ("the appointment of receiver, as provided for in the Deed of Trust and Security Agreement, for the defendants' property is necessary to protect the plaintiff's interest").

Here, Borrowers expressly consented to the appointment of a receiver in the event of a default in at least two Loan Documents: the Loan Agreement and Deeds of Trust. Under the

Loan and Deeds of Trust, pursuant to the respective "Rights and Remedies on Default," Brighthouse has the right to have a receiver appointed to:

> take possession of any or all of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, to collect the Proceeds from the Property and apply the Proceeds, over and above cost of the receivership, against the Indebtedness. Beneficiary may apply to any court of competent jurisdiction for the appointment of a receiver or receivers for the Property and of all the earnings, revenues, rents, issues, profits and income therefrom, ex parte, without notice, and without regard to the sufficiency or value of any security for the obligations secured hereby or the solvency of any party bound for its payment, the expenses of which shall be secured by this Deed of Trust. The receiver may serve without bond if permitted by law.

(Rasmussen Decl. ¶¶ 16-17, 26; Complaint, Ex. 1, ¶ 14(g) (Dkt. 14-1); Ex. 4 (Dkt. 14-4).)

### 2. Brighthouse Has a Valid Claim and Is Likely to Succeed.

A receiver is proper here, as Brighthouse is overwhelmingly likely to succeed on the merits of its claims for breach of the Loan. *See N.Y. Life*, 755 F. Supp. at 292 ("[I]n appointing receivers federal courts consider ... plaintiff's probable success in the action"). The Rasmussen Declaration comprehensively addresses Borrowers' continuing defaults under the Loan Documents and Borrowers' failure to timely pay in response to Brighthouse's Notice of Default and Acceleration of Debt.  The amounts due and owing to Brighthouse as a result of those defaults continue to increase on a daily basis.

### 3. Brighthouse Is Entitled to a Receiver to Protect Its Property Interests and Collateral From Irreparable Harm.

A court is "well within its discretion" to appoint a receiver where property constituting collateral is "in danger of substantial waste and risk of loss" or "may become insufficient to discharge the debt which it secures." *Canada Life Assur. Co.*, 563 F.3d at 845.  Borrowers are experiencing extreme financial difficulties and will not be able to continue operating without additional funds, including being unable to maintain post-harvest activities essential to the maintenance and operation of the Brighthouse Receivership Property. (Rasmussen Decl. ¶ 23; RJN Ex. 1 at 4:1-4.)  If the Brighthouse Receivership Property is not cared for, substantial and long-lasting damage is likely to occur in the next several weeks and beyond. (Rasmussen Decl. ¶ 24.) The Receivership Property, including Proceeds, are under an immediate threat of damage, thereby

threatening the value of Brighthouse's collateral and its ability to recover. (Rasmussen Decl. ¶ 25.) A receivership is immediately necessary to prevent Borrowers from further eroding Brighthouse's Receivership Property and undermining prospects for repayment.

**4.  Borrowers' Financial Distress Requires the Court to Appoint a Receiver.**

A "foremost factor" in whether a receiver should be appointed is the defendant's doubtful financial standing and imminent insolvency. *Canada Life Assur. Co.*, 563 F.3d at 844–45; N.Y. Life, 755 F. Supp. at 292 ("Most important among the factors are the adequacy of the security and the financial position of the mortgagor"). The Borrowers are in financial distress. Borrowers and/or their affiliated farming entities have stipulated and agreed to the appointment of a receiver in two related actions involving real property collateral in their integrated farming operations (RJN, Exs. 1 and 2) and in one stipulation, acknowledged that "Borrowers face significant cash flow issues and will not have sufficient cash to maintain, preserve, and care for the Property, including but not limited to trees and crops" and that "[s]uch actions would cause damage to the Property, including causing the trees (which make up a significant value of the Property) to be damaged or die." (RJN, Ex. 1 at 4:1-4.) There is no evidence to suggest that Borrowers' financial condition will improve at all, let alone enough to manage, operate, and appropriately care for the Brighthouse Receivership Property.

**B.  THE COURT SHOULD GRANT BRIGHTHOUSE A PRELIMINARY INJUNCTION.**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 55 U.S. 7, 20 (2008). In determining whether to grant a temporary restraining order or preliminary injunction, courts in this Circuit consider four factors: (1) whether the applicant is likely to succeed on the merits of their claim; (2) whether the applicant is likely to suffer irreparable harm absent the preliminary injunction; (3) whether the equities weigh in favor of the proposed injunction; and (4) whether the preliminary injunction is in the public interest. *Id.* at 20.

The evidence laid out above establishes each factor weighs in favor of Brighthouse and the Court's issuance of immediate injunctive relief. The amounts due and owing under the Loan Documents, the defaults thereunder, and the impossibility to cure any such defaults given the size of the obligations also establish Brighthouse's likeliness to succeed on the merits of its claim. Additionally, Brighthouse has also shown above that it is likely to suffer irreparable harm in the absence of relief, and that the balance of the equities tips in its favor. Finally, once the Court appoints a receiver herein, an injunction benefits the public interest because the receiver needs to be able fulfill its duties and obligations without potentially disruptive interference.

### C. IF A BOND IS REQUIRED, A NOMINAL UNDERTAKING IS APPROPRIATE.

Security is required for issuance of a preliminary injunction. Fed. R. Civ. P. 65(c).

#### 1. The Court Should Order a Nominal Undertaking.

In light of the Borrowers' financial distress, Brighthouse proposes a nominal undertaking to redress Defendants from any damage that may result from the Court's appointment of a temporary receiver and issuance of a preliminary injunction. Any damage Borrowers' assets may suffer as a result of the Court's appointment of a temporary receiver and issuance of a preliminary injunction would not harm Borrowers, but Brighthouse. An undertaking should be nominal. (*See* Brighthouse Receiver Decl. ¶ 9.)

#### 2. Receiver's Bond.

Under L.R. 232(i), the receiver must maintain an undertaking. Pursuant to L.R. 151(h), Brighthouse, upon issuance of the Court's order appointing the receiver, proposes it post a cash deposit and submit a proposed written instrument, "executed and acknowledged by the party, setting forth the conditions on which the deposit is made, and the fact that the Clerk may collect or sell the obligations and apply ... the cash deposited[] in the case of default." L.R. 151(h).

### D. THE COURT SHOULD APPOINT PHILLIP CHRISTENSEN OF AGRIGLOBE LLC AS RECEIVER.

Brighthouse requests that Phillip Christensen of Agriglobe LLC (the "Brighthouse Receiver") be appointed as receiver herein. The Brighthouse Receiver Decl. supporting his proposed receivership is attached hereto, which, among other things, provides for a general

overview of Agriglobe LLC and a proposed fee schedule, and attaches the proposed Brighthouse Receiver's curriculum vitae. These documents demonstrate that the proposed Brighthouse Receiver is experienced in the maintenance, management, and daily operation of properties similar to the Brighthouse Receivership Property.

Mr. Christensen is a proper and competent receiver here. He is neither a party nor an attorney for a party to this action; has no interest in the action; and is not related to any judge of this Court. He will accordingly act as an agent of the Court and not of any party, carrying out its receivership duties neutrally and "for the benefit of all who may have an interest in the receivership property," and it will hold "assets for the court," not for any party. He will provide, as necessary, an inventory, monthly reports, and a final report. *See* L.R. 232(e)(1)–(2).

## IV. CONCLUSION

Based upon all of the foregoing factors, pursuant to Federal Rule of Civil Procedure 66 and L.R. 232, Brighthouse respectfully submits that a receiver must be appointed to operate, preserve, and protect the Brighthouse Receivership Property pending a resolution of the above-captioned action. Brighthouse also respectfully request the entry of a preliminary injunction to prevent parties from interfering with the Brighthouse Receiver or the Brighthouse Receivership Property during the pendency of this receivership.

WHEREFORE, in view of the foregoing, the Plaintiff hereby request that the Court enter an Order:

(i)  appointing Phillip Christensen as the Brighthouse Receiver to operate, preserve, and protect the Brighthouse Receivership Property, to collect the rents from and pay the expenses of the Brighthouse Receivership Property (including the fees and expenses of the Brighthouse Receiver), to turn over the net rents (if any) to Brighthouse on a monthly basis, and to take such other and further actions with regard to the Brighthouse Receivership Property as are permitted by the Order and applicable law;

(ii)  for an order calendaring a hearing on the continuation of the receivership and order to show cause as to why a preliminary injunction should not issue. See L.R. 232(c); L.R. 231;

(iii) enjoining the Borrowers and Guarantor Defendants, their officers and directors, vendors, and any and all third parties from interfering with the Brighthouse Receiver or the Brighthouse Receivership Property during the pendency of the receivership; and

(iv) providing Brighthouse with such other and further relief as the Court deems just and appropriate.

DATED: November 21, 2024                    STOEL RIVES LLP

By: /s/ Thomas A. Woods
MICHAEL B. BROWN, Bar No. 179222
michael.brown@stoel.com
THOMAS A. WOODS, Bar No. 210050
thomas.woods@stoel.com
BENJAMIN J. CODOG, Bar No. 307034
ben.codog@stoel.com
MICHELLE J. ROSALES, Bar No. 343519
michelle.rosales@stoel.com

*Attorneys for Plaintiff*
BRIGHTHOUSE LIFE INSURANCE COMPANY